# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| SOPHIA RIVAS,<br><br>    Plaintiff,<br><br>v.<br><br>BG RETAIL, LLC, et al.,<br><br>    Defendants. | Case No. 16-cv-06458-BLF<br><br>**ORDER (1) GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND (2) GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE INCENTIVE AWARD**<br><br>[Re: ECF 63, 61] |

Plaintiff Sophia Rivas ("Plaintiff") and Defendants BG Retail, LLC, dba Naturalizer, and Caleres, Inc. ("Defendants") have entered into Class Action Settlement Agreement ("Settlement Agreement" or "Settlement") in this wage and hour class action.

Two motions are before the Court: (1) Plaintiff's Motion for Final Approval of Class Action Settlement ("Mot. for Approval", ECF 63) and (2) Plaintiff's Motion for Attorneys' Fees, Costs, Expenses, and Class Representative Incentive Award ("Mot. for Fees", ECF 61). On December 10, 2019, the Court heard oral arguments on both motions (the "Hearing"). For the reasons discussed below and those stated on the record at the Hearing, Plaintiff's Motion for Final Approval of Class Action Settlement is GRANTED and Plaintiff's Motion for Attorneys' Fees, Costs, Expenses, and Class Representative Incentive Award is GRANTED IN PART.

## I. BACKGROUND

Defendants operate a chain of retail footwear stores under the brand name "Naturalizer." Complaint ("Compl.") ¶ 26, ECF 2, Exh. A. Defendants operate 15 stores in California. *Id.* Plaintiff worked for Defendants as a non-exempt, hourly paid Store Manager from approximately April 2011

to December 2015 at the Milpitas, California store location. *Id.* ¶ 4. Plaintiff filed this class action on September 29, 2016, in the Superior Court of the State of California, County of Santa Clara. *See* Compl. The Complaint asserts ten (10) causes of actions under various California labor and business codes. *See generally* Compl. On November 4, 2016, Defendants removed the action to this District. ECF 1, 2. On January 30, 2019, the parties appeared before the Honorable Joseph C. Spero, United States Magistrate Judge, for a judicial settlement conference. ECF 50. As a result, the parties entered into a Settlement Agreement. Class Action Settlement Agreement ("Agreement"), ECF 57-1, Exh. 1.

## II. THE SETTLEMENT AGREEMENT

The principal terms of the Settlement provide for the following:

(1) A Settlement Class defined as: All persons who are or were employed by Defendants in a non-exempt, hourly-paid position in any of Defendants' California "Naturalizer" retail locations from September 30, 2012 until July 25, 2019. Agreement ¶ 1.20.

(2) An all-inclusive and non-reversionary Gross Settlement Amount of $175,000 (including employer payroll taxes). Agreement ¶¶ 1.12, 7.1. The Gross Settlement Amount includes: (a) a Remaining Distribution Fund[1] which will be allocated to all Class Members who do not opt out of the Settlement Class on a pro-rata basis according to the number of weeks each Class Member worked during the Class Period and without the need to submit claims for payment (*id.* ¶¶ 1.17, 8.1); (b) attorneys' fees not to exceed $78,750 and litigation costs and expenses not to exceed $20,000 to Plaintiff's Counsel, Capstone Law APC ("Plaintiff's Counsel" or "Class Counsel") (*id.* ¶¶ 1.11, 7.3); (c) settlement administration costs of $6,500, to the court-appointed settlement administrator, ILYM Group, Inc. (*id.* ¶¶ 1.11, 7.4); and (d) a class representative service award of $2,500 to Sophia Rivas for her services on behalf of the Settlement Class (*id.* ¶¶ 1.7, 7.2). The average estimated payment is $170.59, the lowest is $0.37, and the highest is $952.26. Declaration of Farrah Ghaffarirafi ("Ghaffarirafi Decl.") ¶ 9, ECF 63-2.

---

[1] "Remaining Distribution Fund" is defined as the sum equal to the Gross Settlement Amount less the Fixed Cost Distribution Fund (attorneys' fees, costs, service award, and expenses). Agreement ¶¶ 1.17, 1.11.

In exchange for the Gross Settlement Amount, Class Members who do not opt out will agree to release the Released Claims, which are defined as:

> Plaintiffs' allegations in the Action and in the Amended Complaint that Defendants (1) failed to pay overtime; (2) failed to pay minimum wages; (3) failed to provide meal periods; (4) failed to provide rest periods; (5) failed to pay wages due timely upon termination of employment; (6) failed to provide itemized wage statements to employees; (7) failed to compensate for split-shifts; (8) failed to reimburse employees for certain business expenses; (9) engaged in unfair business practices; and (10) violated California Labor Code §§ 201, 202, 203, 204, 210, 226, 226.7, 510, 512, 558, 1194, 1194.2, 1197, 1197.1, 1198, and 2802, California Business and Professions Code §§ 17200 et seq., as well as claims that could have been brought in the Complaint.

Agreement ¶¶ 1.3.

### III. PRELIMINARY APPROVAL AND NOTICE PLAN

On July 25, 2019, the Court issued an order which (1) granted preliminary approval of the class action settlement; (2) preliminarily certified the class; (3) appointed Ms. Rivas as class representative; (4) appointed Plaintiff's counsel (Capstone Law APC) as Class Counsel; (5) approved ILYM Group, Inc. as the Settlement Administrator; and (6) approved the proposed Class Notice. *See* Order Granting Motion for Preliminary Approval of Class Action Settlement ("Prelim. Order"), ECF 60. The Court directed notice by mail and set deadline of October 14, 2019 for objections and exclusions. *Id.* ¶ 11.

As authorized by the Court, the parties engaged ILYM to provide settlement administration services. Ghaffarirafi Decl. ¶ 2. On July 26, 2019, ILYM received the Class Notice prepared jointly by Class Counsel and counsel for Defendants and approved by the Court. *Id.* ¶ 3. The Class Notice summarized the Settlement's principal terms, provided Class Members with an estimate of how much they would be paid if the Settlement received final approval, and advised Class Members about how to opt out of the Settlement and how to object. *Id.*, Exh. A.

Separately, counsel for Defendants provided ILYM with a mailing list (the "Class List"), which included each Class Member's full name, last known address, Social Security Number, and information necessary to calculate payments. Ghaffarirafi Decl. ¶ 3. The mailing addresses contained in the Class List were processed and updated using the National Change of Address

3

Database maintained by the U.S. Postal Service. *Id.* ¶ 4. On August 14, 2019, ILYM mailed Class Notices to Class Members via First-Class U.S. mail. *Id.* Class Members were given 60 days to opt out or object to the Settlement. *Id.*, Exh. A. No Class Members objected to the Settlement and only one Class Member opted out of the settlement Class. *Id.* ¶¶ 6-7.

## IV. MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A. The Class Meets the Requirements for Certification under Rule 23

A class action is maintainable only if it meets the four requirements of Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In a settlement-only certification context, the "specifications of the Rule – those designed to protect absentees by blocking unwarranted or overbroad class definitions – demand undiluted, even heightened, attention." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In addition to satisfying the Rule 23(a) requirements, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Id.* at 614. Plaintiff seeks certification under Rule 23(b)(3), which requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Court concluded that these requirements were satisfied when it granted preliminary approval of the class action settlement. *See* Prelim. Order ¶ 2. The Court is not aware of any new facts which would alter that conclusion. Thus, the Court concludes that the requirements of Rule 23 are met and that certification of the class for settlement purposes is appropriate.

### B. Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a

4

certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). Moreover, "[a] district court's approval of a class-action settlement must be accompanied by a finding that the settlement is 'fair, reasonable, and adequate.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)). District courts "must evaluate the fairness of a settlement as a whole, rather than assessing its individual components." *Lane*, 696 F.3d at 818-19. "[A] district court's only role in reviewing the substance of that settlement is to ensure that it is fair, adequate, and free from collusion." *Id.* at 819 (internal quotation marks and citation omitted). In making that determination, district courts are guided by several factors articulated by the Ninth Circuit in *Hanlon v. Chrysler Corp* ("*Hanlon* factors"). *Id.* Those factors include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026; *see also Lane*, 696 F.3d at 819 (discussing *Hanlon* factors). "Additionally, when (as here) the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness.'" *Lane*, 696 F.3d at 819 (quoting *Hanlon*, 150 F.3d at 1026).

### C. Notice was Adequate

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon,* 150 F.3d at 1025. For the Court to approve a settlement, "[t]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco,* 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

The Court previously approved Plaintiff's plan for providing notice to the class ("Notice Plan") when it granted preliminary approval of the class action settlement. *See* Prelim. Order ¶ 7. Since then, Class Counsel and Defendants have worked with the Settlement Administrator to

5

implement the Notice Plan. Ghaffariraf Decl. ¶¶ 2-8. On August 14, 2019, Notice Packets were mailed to the 396 Class Members identified in the Class List by First Class mail. *Id.* ¶ 4. As of October 23, 2019, 38 Notice Packets were returned by the post office. *Id.* ¶ 5. For those without forwarding addresses, ILYM performed skip traces to locate new mailing addresses. *Id.* A total of 21 Notice Packets were re-mailed because a better mailing address was found. *Id.* Altogether, 17 Notice Packets were not delivered because a better mailing address could not be found. *Id.* Only one class member requested to be excluded from the settlement. *Id.* ¶ 6. No objections were received. *Id*. ¶ 7.

Based on the foregoing, Court is satisfied that the class members were provided with adequate notice.

### D. The Settlement is Fundamentally Fair, Adequate, and Reasonable

The Court, guided by the *Hanlon* factors, has evaluated the Settlement and concludes that the Settlement is fundamentally fair, adequate and reasonable. Most importantly, there is no indication of collusion because the Settlement is a result of post-discovery, arms-length negotiations between experienced counsel with guidance from Judge Spero. *See* ECF 49, 50. "A presumption of correctness is said to 'attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.'" *In re Heritage Bond Litig.*, No. 02- ML-1475 DT, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) (quoting Manuel for Complex Litigation (Third) § 30.42 (1995)). The Court has found that Class Counsel "have demonstrable experience litigating, certifying, and settling class actions." Cert. Order ¶ 9. Moreover, Judge Spero's "participation weighs considerably against any inference of a collusive settlement." *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008).

Considerations of risk, expense, complexity, and likely duration of further litigation in this case support the fairness of the Settlement. During this matter's pendency, Plaintiff's Counsel investigated and researched the claims, Defendants' defenses, and the developing body of law. Declaration of Raul Perez ("Perez Decl.") ¶ 3, ECF 63-1. The investigation entailed the exchange of information pursuant to formal and informal discovery methods, including interrogatories and

document requests. *Id.* Specifically, Plaintiff's Counsel evaluated the strengths and weaknesses of the case by (1) determining Plaintiff's suitability as a putative class representative through interviews, background investigations, and analyses of her employment files and related records; (2) evaluating all of Plaintiff's potential claims; (3) researching similar wage and hour class actions as to the claims brought, the nature of the positions, and the type of employer; (4) analyzing Defendants' labor policies and practices; (5) researching settlements in similar cases; (6) conducting a discounted valuation analysis of claims; and (7) engaging in settlement process. *See id.* ¶ 4.

Plaintiff's Counsel's investigation revealed several defenses Defendants could have argued –and potentially prevailed on—regarding each of Plaintiff's claims, some of which involved unresolved legal issues. *See* Mot. for Approval at 7-9; Perez Decl. ¶¶ 8-13. Moreover, Plaintiff had yet to file a motion for class certification, and thus, there was a risk that the class would not be certified. *See Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 888 (C.D. Cal. 2016) ("Because plaintiffs had not yet filed a motion for class certification, there was a risk that the class would not be certified."). Given that the case was still at the pleading stage, it is likely that litigation would have continued for a significant period of time absent settlement. Such litigation would have resulted in substantial expenditure of resources by both sides, particularly if the case reached the class certification stage. Also, Plaintiff would have risked dismissal of some or all her claims.

The Court also finds the amount offered in settlement to be fair and adequate, despite the modest recovery. Based on the information and evidence produced by Defendants during discovery, including a sample of time and wage records, Plaintiff's Counsel calculated Defendants' maximum potential exposure for the claims at issue, which are summarized in the table below:

| Claims | Value |
|---|---|
| Regular Rate – Overtime | $122,327.00 |
| Regular Rate – Meal and Rest | $1,208.00 |
| Only Manager on Duty – Meal Breaks | $370,037.00 |
| Only Manager on Duty – Rest Breaks | $1,246,200.00 |
| Wage Statement | $ 756,000.00 |
| Waiting Time Penalties | $362,866.00 |
| **TOTAL** | **$2,858,638.00** |

Perez Decl. ¶ 6, ECF 63-1.

7

After calculating Defendants' potential maximum exposure for the above claims, Plaintiff's Counsel determined an appropriate range of recovery for settlement purposes by offsetting Defendants' maximum theoretical liability by: (i) the strength of Defendants' defenses on the merits; (ii) the risk of class certification being denied; (iii) the risk of losing on any of a number of dispositive motions that could have been brought between certification and trial (e.g., motions to decertify the class, motions for summary judgment, and/or motions *in limine*) that might have eliminated all or some of Plaintiff's claims; (iv) the risk of losing at trial (including the Court deeming the trial unmanageable on a representative basis); (v) the chances of a favorable verdict being reversed on appeal; and (vi) the difficulties attendant to collecting on a judgment. Perez Decl. ¶ 7.

Taking into account the totality of the considerations above, Plaintiff's counsel determined that a settlement of approximately 6.12% of Defendants' maximum potential exposure for class claims (with 2.4% net recovery to the class) was fair and reasonable under the circumstances. *See* Perez Decl. ¶ 14; *see also In re LDK Solar Sec. Litig.*, No. 07-cv-05182-WHA, 2010 WL 3001384, at *2 (N.D. Cal. July 29, 2010) (granting final approval where "[t]he proposed settlement amount is [. . .] only about five percent of the estimated damages before fee and costs—even before any reduction thereof for attorney's fees and costs."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement of "just over 9% of the maximum potential recovery"); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval to settlement with net recovery to Plaintiffs valued at 7.3% of potential maximum recovery).

While this percentage recovery is modest compared to the potential maximum, that alone is not sufficient reason to reject the Settlement. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982); *see also In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 258 (D. Del. 2002), aff'd, 391 F.3d 516 (3d Cir. 2004) ("Even a small percentage of the maximum possible recovery can be a reasonable settlement."). Plaintiff considered the significant risks and expenses associated

with this case absent a settlement and has agreed to accept a smaller certain award rather than seek the full recovery but risk getting nothing. *See* Perez Decl. ¶¶ 8-13. The Court is persuaded that the significant obstacles that Plaintiff points out, would have made recovery outside of Settlement difficult in this case.

Additionally, the average recovery in this case ($170.59) is comparable to other wage and hour class action settlements approved by courts in California. *See e.g., Miceli v Intern. Coffee & Tea, LLC*, No. BC557239, 2017 WL 2840618, at *4 (Cal.Super. May 31, 2017) (approving settlement where average settlement payment was $113.03); *Schiller v. David's Bridal, Inc.*, No. 1:10-CV-00616-AWI, 2012 WL 2117001, at *17 (E.D. Cal. June 11, 2012), *report and recommendation adopted,* No. 1:10-CV-616-AWI-SKO, 2012 WL 13040405 (E.D. Cal. June 28, 2012) (describing average class recovery of $198.80 as "good" in wage-and-hour case, compared to similar cases with average recoveries of $50-60 per class member); *Roberts v. Marshalls of CA, LLC*, No. 13-CV-04731-MEJ, 2018 WL 510286, at *9 (N.D. Cal. Jan. 23, 2018) (approving settlement where the average gross payment to class members was $66.75). Under the circumstances of this case, the Court finds the amount agreed upon by the parties reasonable.

Finally, the Court's favorable view appears to be shared by class members. Notice Packets were mailed to the 396 Class Members identified in the Class List by First Class mail, with only 17 ultimately undeliverable. Ghaffarirafi Decl. ¶¶ 4-5. Only one class member requested to be excluded from the settlement. *Id.* ¶ 6. Class Counsel, Class Administrator, and the Court have received no objections. *See id*. ¶ 7. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted). This positive response further confirms that the settlement is fair and reasonable.

**E. Conclusion**

For the foregoing reasons, and after considering the record as a whole, the Court finds that notice of the proposed settlement was adequate, the settlement was not the result of collusion, and the settlement is fair, adequate, and reasonable. Thus, Plaintiff's Motion for Final Approval of the

Settlement is GRANTED.

F. **Payment to the Settlement Administrator**

Plaintiff requests final approval of settlement administration costs in the amount of $6,500. Motion at 13, Ghaffarirafi Decl. ¶ 10, Ex. B. ILYM has distributed the Class Notice to Class Members and completed its duties in accordance with the settlement terms and the Court's preliminary approval Order. *See generally* Ghaffarirafi Decl. Accordingly, the Court finds that the $6,500 payment is fair and reasonable and thus APPROVES the payment to the Settlement Administrator.

V. **MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

Plaintiff seeks an award of (1) $78,750 in attorneys' fees, (2) $18,955.30 in litigation costs and expenses, and (3) a $2,500 incentive award for Ms. Rivas, the lead Plaintiff.

A. **Attorneys' Fees**

1. **Legal Standard**

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. *Id.* at 942.

Under the lodestar method, attorneys' fees are "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. This amount may be increased or decreased by a multiplier that reflects factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 942.

Under the percentage-of-recovery method, the attorneys are awarded fees in the amount of

a percentage of the common fund recovered for the class. *Bluetooth*, 654 at 942. Courts applying this method "typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure." *Id.* (internal quotation marks omitted). However, "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.3d 1301, 1311 (9th Cir. 2011). Relevant factors to a determination of the percentage ultimately awarded include: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Tarlecki v. bebe Stores, Inc.*, No. C 05–1777 MHP, 2009 WL 3720872, at *4 (N.D. Cal. Nov. 3, 2009).

An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted).

### 2. Discussion

Plaintiff suggests (and Defendants do not oppose) that the lodestar method is the preferable method for evaluating attorneys' fees in this case. "The choice of a fee calculation method is generally one within the discretion of the trial court, the goal under either the percentage or lodestar approach being the award of a reasonable fee to compensate counsel for their efforts." *Laffitte v. Robert Half Internat. Inc.*, 1 Cal. 5th 480, 504, 376 P.3d 672, 687 (2016). The Court applies the lodestar method in this case because the lodestar method is (1) a well-established method for determining the reasonableness of an attorney's fee award and (2) preferred by the parties.

The Court is satisfied that the request for attorneys' fees is reasonable. First, Class Counsel's hourly rates are reasonable. When determining an attorney's reasonable hourly rate, courts weigh the "experience, skill, and reputation of the attorney requesting fees," and compare the requested rates to prevailing market rates of the relevant community. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986), *op. am. on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987); *see*

11

*also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The relevant community is typically the forum in which the district court sits. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). To determine the prevailing market rate, courts may rely on attorney affidavits as well as "decisions by other courts awarding similar rates for work in the same geographical area by attorneys with comparable levels of experience." *Trujillo v. Orozco, No.* 5:17-cv-00566-EJD, 2018 WL 1142311, at *2 (N.D. Cal. Mar. 2, 2018); *see also United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Here, the relevant community is the Northern District of California.

Class Counsel has submitted a detailed itemization of attorneys' fees and costs. *See* Declaration of Raul Perez in Support of the Motion for Attorneys' Fees, Costs and Expenses, and A Class representative Incentive Award ("Perez Decl. II") ¶ 6, ECF 61-1. Class Counsel's hourly rates range from $395 to $725 for attorneys with 9-25 years of experience. *Id.* ¶ 12. Class Counsel's rates are reasonable and comparable to the fees generally charged by attorneys with similar experience, ability, and reputation for work on similar matters in this judicial district. *See, e.g., Superior Consulting Servs., Inc. v. Steeves-Kiss*, No. 17-cv-06059-EMC, 2018 WL 2183295, at *5 (N.D. Cal. May 11, 2018) ("[D]istrict courts in Northern California have found that rates of $475–$975 per hour for partners and $300–$490 per hour for associates are reasonable."); *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015) (finding reasonable rates for Bay Area attorneys of $475–$975 for partners and $300–$490 for associates); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (finding no abuse of discretion in awarding fees at a 2008 hourly rates of $875 for a partner and $425 for a fifth-year associate). Moreover, other courts have approved Class Counsel's hourly rates. *See e.g., Black v. T-Mobile USA, Inc.*, No. 17-CV-04151-HSG, 2019 WL 3323087, at *6 (N.D. Cal. July 24, 2019) (approving Capstone Law APC's rates for associates ($295 to $435) and Senior Counsel/Partners ($495 to $725)).

Second, Class Counsel has submitted an itemized list of the attorney hours spent on investigating, prosecuting, and settling the Class's claims. Perez Decl. II ¶ 6. Class Counsel litigated this case since 2016 without any guarantee of payment, committing nearly 300 hours of attorney time. *Id.*; Mot. for Fees at 6. The Court has independently reviewed the Class Counsel's

hours and finds them reasonable. Even if some of the actual attorney hours were unnecessary, Class Counsel has compensated by applying a large negative multiplier, as discussed below.

Third, while Class Counsel's lodestar is $160,270, the requested fee amount is $78,750 – representing an application of a negative multiplier of 0.49. A negative multiplier "suggests that the negotiated fee award is a reasonable and fair valuation of the services rendered to the class by class counsel." *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010); *see also Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 690 (N.D. Cal. 2016) ("[C]ourts view self-reduced fees favorably."). Moreover, although not requested, Class Counsel would have normally been entitled to a positive multiplier due to the contingent nature of this case. "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). The Court finds that the negative multiplier of 0.49 supports the conclusion that the requested fees are reasonable.

The Court notes that if analyzed under the percentage-of-recovery method, Class Counsel's requested fees are above the Ninth Circuit benchmark of 25%. The requested fee amount is $78,750, which is approximately 45% of the total recovery in this case ($175,000). However, "case law surveys suggest that 50% is the upper limit, with 30-50% commonly being awarded in case in which the common fund is relatively small." *Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010) (citing Rubenstein, Conte and Newberg, NEWBERG ON CLASS ACTIONS at § 14:6) *see also Miller v. CEVA Logistics USA, Inc*., No. 2:13-CV-01321-TLN, 2015 WL 4730176, at *8 (E.D. Cal. Aug. 10, 2015) ("California district courts usually award attorneys' fees in the range of 30–40% in wage and hour class actions that result in the recovery of a common fund under $10 million."); *Alvarez v. Farmers Ins. Exch.*, No. 3:14-CV-00574-WHO, 2017 WL 2214585, at *3 (N.D. Cal. Jan. 18, 2017) ("Fee award percentages generally are higher in cases where the common fund is below $10 million."). The Court has considered the risks associated with this this action, absence of opposition, Class Counsel's well-documented hours worked in this action, the application of a large negative multiplier, and the modest amount of overall recovery – and concludes the requested fee amount reasonable. *See Gomez v. H & R Gunlund*

13

*Ranches, Inc.*, No. CV F 10-1163 LJO MJS, 2011 WL 5884224, at *5 (E.D. Cal. Nov. 23, 2011) (approving fees at 45% of the settlement fund).

### B. Plaintiff's Counsel's Out-of-Pocket Expenses

Class Counsel has submitted an itemized list of expenses by category of expense (totaling $18,280.30, excluding Settlement Administration fees. *See* Perez Decl. II ¶ 19. The Court has reviewed the list and finds the expenses to be reasonable. At the time Plaintiff filed her motion for attorneys' fees, counsel expected to appear in person at a hearing for final approval of the settlements. With that understanding, Class Counsel anticipated an additional $675 in travel-related costs to attend the final approval hearing. *Id.* ¶ 10. Based on scheduling issues, however, the parties attended the Hearing telephonically, and thus, did not incur travel costs. *See* ECF 68. Accordingly, the Court declines to award the additional $675 in travel costs. In sum, the Court APPROVES an award of $18,280.30 to Class Counsel for litigation expenses.

### C. Class Representative Incentive Award

Class Representative, Ms. Rivas requests an incentive award in the amount of $2,500. Incentive awards "are discretionary ... and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (internal citation omitted). "Incentive awards typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015). Service awards of $5,000 are presumptively reasonable in this judicial district. *See, e.g., Camberis v. Ocwen Loan Serv. LLC*, Case No. 14-cv-02970-EMC2015 WL 7995534, at *3 (N.D. Cal. Dec. 7, 2015).

Ms. Rivas's participation was substantial and essential throughout the pendency of this case, up to settlement discussions and decisions. *See* Declaration of Sophia Rivas ("Rivas Decl.") ¶¶ 3-5. Given the amount of time and effort Ms. Rivas put into the case and the success of the recovery, an incentive award in the amount of $2,500 is proportional and reasonable. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015) (approving $5,000 incentive awards where individual class members each received $12). Moreover, by bringing this action against an

14

employer, Ms. Rivas has assumed reputational risk that may impact her ability to find employment in the future. *See Billinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267-68 (N.D. Cal. 2015) (recognizing "the risks associated with initiating the litigation and representing the class"). The Court concludes that the requested $2,500 incentive award is appropriate in this case.

### D. Conclusion

For the foregoing reasons, the Court concludes that the Class's request for attorneys' fees, costs and incentive award is reasonable and thus, GRANTS Class's Motion for Award of Attorneys' Fees in the amount of $78,750, GRANTS IN PART Costs in the amount of $18,280.30, and GRANTS an Incentive Award in the amount of $2,500.

## VI. ORDER

(1) Plaintiff's Motion for Final Approval of Class Action Settlement at ECF 63 is GRANTED;

(2) Plaintiff's Motion for Award of Attorneys' Fees, Costs, Expenses, and Incentive Award at ECF 61 is GRANTED IN PART; and

(3) The Clerk shall close the file pursuant to this order and the Order and Final Judgment issued simultaneously.

**IT IS SO ORDERED.**

Dated: January 16, 2020

_____
BETH LABSON FREEMAN
United States District Judge